Let's pass this case for the time being. Let's go to Perry v. Brown. Mr. Petrani. Stephen Petrani Thank you, Your Honor. May it please the court, my name is Stephen Petrani and I represent the appellant, DeWayne Perry. Now the district court in this case dismissed Mr. Perry's habeas petition as untimely based on its erroneous holding that aphasia, a mental handicap that damages the ability to communicate and understand language, cannot be an external obstacle for the purposes of equitable tolling. That conclusion cannot be right, as even the state concedes. Accordingly, this court need go no further. It can vacate the district court's opinion, correct that mistake, and remand further proceedings. Now this court and others have, across the board, held that mental handicaps can be external obstacles for the purposes of equitable tolling, and that makes sense. Equitable tolling is based on two considerations, extraordinary circumstances and reasonable diligence. Only the former of these is at issue here, extraordinary circumstances. And what this court, and every other court, has said is that it has to be some extraordinary circumstance outside of the litigants' control that impaired their ability to timely file. That doesn't mean it has to be literally external to the person, as the district court appears to have believed. So, although this court and others have used the phrase external object, they've also explicitly said, as in the Lombardo case that we cite in our briefs, that all that means is that it has to be some extraordinary circumstance outside of the litigants' control, as the aphasia here certainly was. Now the state, on page seven of its brief, concedes this. It says that Mr. Perry has alleged that he suffers impairments sufficient to support equitable tolling. But the state then goes on to dispute Mr. Perry's evidence. So the question is, could Mr. Perry really be that severe? We won't know really if it's what caused his problems in state court and led to his untimely filing. These are perfectly acceptable arguments at an evidentiary hearing or some sort of fact investigation. But the district court never got anywhere near that stage of the proceedings. The district court in essentially one sentence held that Mr. Perry's language difficulties, as the district court phrased it, are not an external obstacle. But for the reasons I've already laid out, that cannot be right. Now it's important at this stage for the court to remand rather than getting into the state's evidence and fact-based arguments. For one thing, as this court has noted on numerous occasions, for instance in Socia v. Baughton, equitable tolling is a fact-intensive question. And if we're going to have a holding on equitable tolling based on the facts in this case, it should be based on the district court's actually investigating those facts, which it has not done to this point. In its order, it did not presume to discredit or disbelieve. Did Mr. Perry offer any evidence about the state of his aphasia in 2016 and 2017? So he made allegations, Your Honor. He asked if he offered evidence. Well, the most recent evidence that he has is from 2009. That's the documents that are in the supplemental appendix. But I don't think that that's really a problem for a couple of reasons. One would be he alleged that he continued to suffer from aphasia, and in fact alleged that he continues to suffer it to this day. I don't think aphasia is something that goes away, but its manifestation can change over time. Yes. And that's why I asked whether there was evidence about the state of his linguistic abilities in 2016 to 2017. So there's his allegations, and there's the fact that he clearly had a miscommunication with the state court. I think it colors his entire state post-conviction proceedings. It's not clear if his communications with the state court have anything to do with his ability to use language, as opposed to the fact that he was not a lawyer and just doesn't understand with and without prejudice. Well, I think that that's un- And that's not sufficient for tolling. So a couple of responses to that, Your Honor. First of all, if the court has these concerns about the basis of his allegations or evidence or these sorts of things, I think that's precisely the sort of thing that the district court should figure out in the first instance, given that it has the power to investigate the facts, hold an evidentiary hearing, and so forth. Moreover, outside of him, in his petition, in his reply brief, and generally speaking, if there were an evidentiary hearing or something along those lines in his testimony, it's not clear what exactly he could do other than say, yes, I didn't understand what was going on because I thought this word meant that word. And I think his behavior afterwards also lends credence to this. He didn't go to the state court and say, oh, no, no, no, I misunderstood in some general sense. He immediately said in trying to get this error fixed, I have aphasia, I misunderstand words, and sometimes I say the wrong words. And this is something that he's been living with, as he's alleged, for about a decade. So it's something that I think that he would have experience with and would be able to credibly say, this is the reason why I misunderstood. If the state wants to challenge that, of course they're free to do so. But that's not what the district court held. The district court did not hold, I don't believe him. The district court didn't hold, I don't believe that it was actually aphasia that caused this problem. The district court held that aphasia can't be an external obstacle, and that has to be wrong. And so I believe that the proper remedy is for this court to fix that error and send it back to the district court to examine this under the correct legal standards and under the correct understanding of external obstacle. Mr. Petrani, can you elucidate the sequence with regard to the Certificates of Appealability? So initially in his order, Judge Lawrence makes the determination he's not going to issue the Certificate of Appealability? Initially that's what he said, yes. And is it sua sponte? Yes, yes, sua sponte. So after Mr. Perry requested a Certificate of Appealability from this court, the district court then sua sponte issued its own Certificate of Appealability, which I think goes to the fact that the district court realized that there was a serious issue here with its holding that an external obstacle, or that aphasia cannot be an external obstacle. And in fact, the district court, as it acknowledged in that COA, hadn't even reached the merits. But it went on to find that the first substantive claim, his claim about the omnibus date, was a close question and justified the COA on the procedural claim as well. And so I think that given that the district court got very, or I should say did not get very far into its analysis of this case, it basically just saw that he had alleged aphasia but held that's not an external obstacle and ended its analysis at that point. I think that the proper remedy is for this court to correct that error and send it back rather than try to engage in evidentiary issues and these sorts of things that the state raises that were never litigated in the district court. And I think that's particularly true given that he's a pro se litigant without counsel who suffers from aphasia. I think he should have the opportunity at the district court to try to develop these claims. If there are no further questions, I'll save the remainder of my time for the bottle. Certainly counseled. Mr. Banks. Thank you, Your Honor, and may it please the court. Almost ten and a half years ago, Mr. Perry suffered a stroke. And almost a decade later, he is claiming that his alleged trouble expressing himself with language as he pleaded in the district court. Did the state put in the record any evidence about this man's language abilities in 2016 to 2017? No, Your Honor. We didn't and it's unclear whether any is available. Has he been subject to periodic testing in prison? I'm unaware of any testing, Your Honor. So the answer is you don't know. The answer is I do not know, Your Honor. But what we do know is that this case features less of a severe handicap than those other cases in which this court denied equitable tolling without the need for a hearing. In Mayberry v. Dittman, the district court had before it evidence that the petitioner was in the, quote, mild range of mental retardation with an IQ of 64, had prison classification documents indicating that he was in the class of prisoners with serious mental illness and a previous finding of incompetence in the state courts. This court denied equitable tolling without a hearing. In Conroy v. Thompson, the petitioner had been diagnosed with depressive and schizoaffective disorders. This court held that those conditions were not... Without some diagnosis in the record, how do we know the extent of his linguistic abilities? Well, I think the state court record tells us a lot, Your Honor. The state court record is replete with Mr. Perry's consistent and cogent and timely filings. He had filed numerous documents in which he was able to articulate... And you're sure that he wrote them all himself? I don't know whether he wrote them himself, Your Honor, but to the extent that there's language problems here, he was... The quality of the filings indicate that he was at least able to... If we don't know that he wrote them all himself, they don't speak to the extent of his problem. What we know is that they are detailed enough in the facts and the legal conclusion... Look, you would not say that Perry has filed in this court a detailed and cogent brief. Therefore, he does not have a linguistic problem. The correct conclusion is he has a lawyer, right? So why would one draw the conclusion he made detailed and cogent findings in state court? Therefore, he doesn't have a linguistic problem. He might have a jailhouse lawyer. Sure, Your Honor. And it's not necessarily that he doesn't have a problem. It's that that problem is not severe enough to rise to the extraordinary circumstance of acquittal. And to the extent... If we don't know what the problem is, how do we know? We know what the problem is to the extent that Mr. Perry did tell the district court that he has trouble expressing himself with language. And he alleged that that is what caused his misunderstanding of the terms with or without prejudice. But even taking that as given, that puts him in a similar situation as many other people without law degrees. Many other people do not understand the technical difference between with and without prejudice. But even focusing on that particular point is a bit of a red herring, Your Honor, because even if he didn't understand the import of the first post-conviction petition being denied, he surely understood the import of the second one being denied. And when his second one was denied, he still had six months left in the limitations period. Counsel, what about the argument offered by the appellant here is that the standard was misapplied. I don't see Lombardo cited in your brief, for example, that Judge Lawrence just got this idea of external obstacle incorrect. He saw it. He realized that fact and issued the certificate of appealability. What's your response to that? First, to the second part of that question, Your Honor, I believe that it was not a sua sponte decision on Judge Lawrence's. I believe if you look at the notice of appeal that Mr. Perry filed in the district court, it also includes a request for a COA inside of that. I'm pretty sure that's correct. Please check me if I'm wrong. To the extent that Judge Lawrence here said that to take his order to mean that a mental illness can never constitute extraordinary circumstances for equitable tolling, that would be contrary to Davis. But here I think the record is clear. And to Mr. Perry's contention on appeal that pleading is enough, that's never been a holding of this court. This court has never held that the civil pleading standards are those implied in habeas for a few reasons. First, we have a full state court record that comes with habeas petitions. We also have the dual of the interests of finality and federalism that come with habeas petitions. In no case of this court talking about equitable tolling has it made its decision on pleadings alone. There's always been some evidence that it rested its conclusion to deny or grant equitable tolling upon. So pleading, at least based on the practice of this court up to today in equitable tolling, pleading is simply not enough. Again, I guess there could be that case in which some reason for equitable tolling could not at all have appeared in the state court record. It still allows for exhibits or submissions to be made with the habeas petition, which this court has seen in numerous cases, such as Bold. Bold says that an evidentiary hearing isn't required when the allegations are merely vague and conclusory. That's what Mr. Perry's allegations are here. He said he had trouble expressing himself with language that caused his legal misunderstanding. That's insufficient to justify equitable tolling. And even in Bold, Bold had presented evidence. He had given this court or the district court some test scores from the Wisconsin prison system. And this court said that they were not decipherable. They couldn't interpret them. That's a good reason to ask for an evidentiary hearing when you've got evidence that has an ambiguous quality to it. That's not even what we have here. We have selected medical records from more than 10 years ago. Two years, the stroke incurred two years before he even committed his crimes in this case, and seven and a half years before he dismissed his first petition for post-conviction relief in the state courts. Also, an evidentiary hearing is not necessary, again, because the state court record tells us what we need to know. And an evidentiary hearing won't tell us precisely what Mr. Perry was thinking in 2016. Even if we do present these prison reports that may exist, even if we do present the transcript, which was not transcribed in the state courts of when he withdrew his petition, he can still maintain his bare allegation. I just didn't understand. And this court has said that insufficient understanding is not enough to justify equitable tolling. If the court has no further questions of me, I ask that you affirm the district court. Thank you. Thank you, counsel. Anything further, Mr. Petrain? Yes. Your Honor, the state continues, as it did in its brief, to argue about evidence. And I want to make two quick points on why that's inappropriate here. First of all, the statement refers to other cases where this court did, in fact, affirm denials of equitable tolling and looked to some extent to what allegations and evidence were on offer. But I think in all of those cases, as we lay it out in our brief, it's very much different than this one. In Bulb, for instance, the court literally said, how can we understand anything about these vague and conclusory allegations? That is very distinct from here, where he's identified the particular mental handicap he has and how it affected him in state court proceedings. Moreover, I would also point out in Bulb, the court didn't believe him because that wasn't the initial reason he gave. Initially, he said he was late because he was worried about state court proceedings that he was working on. Moreover, the latter half of the state's argument basically said, well, we can never know what was going on in his head in 2016. First of all, I'm not quite sure what to make of this argument. This is what evidentiary hearings are for. It's for the judge to determine, do I believe he's credible? Do I believe what he's telling me? But if that's the state's argument, if the state's argument is, well, we don't really know what happened, then this is just of a piece with Davis and Schmid and similar cases from other circuits that we pointed out, Laws v. Lamarck, where this court has recognized when there's a plausible allegation of mental handicap that impaired their ability to timely file, rather than dismiss, what we will do is correct whatever legal error there was and remand for the district court to figure this out. The district court is in the position to do that. This court, as the state appears to concede, really is not. The state thinks we cannot possibly figure this out. I think the district court can. And for those reasons, we ask that you vacate the district court's opinion and remand for further proceedings. Thank you. Thank you very much. And Mr. Petrani, we appreciate your willingness and that of your law firm to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement.